# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-3932

_____

United States of America

*Plaintiff - Appellee*

v.

Jarod Lee White

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 17, 2016
Filed: October 27, 2016
[Published]

_____

Before MURPHY, BEAM, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Jarod Lee White appeals the district court's[1] revocation of his term of supervised release and imposition of two years' imprisonment. For the following reasons, we now affirm.

White assaulted two police officers in 2010; pleaded guilty to Assault Resulting in Serious Injury in violation of 18 U.S.C. §§ 113(a)(6), 1151, and 1153(a), a Class C felony; and was sentenced to forty-one months' imprisonment to be followed by three years of supervised release. His term of supervised release began February 2013. In September 2013, White was charged in state court with third-degree felony assault and his term of supervised release was revoked. He was sentenced to a year and a day of imprisonment, and his term of supervised release recommenced when he was released in August 2014. In March 2015, White tested positive for marijuana and the conditions of his supervised release were modified to include eight hours of community service. In July 2015, he failed to complete inpatient treatment for alcohol abuse and his conditions of supervised release were further modified to include thirty days of remote alcohol testing. After further violations of the conditions of his supervised release–missing drug and alcohol tests, failing to maintain employment, and failing to maintain contact with his probation officer–the district court changed those conditions a third time in September 2015. It required White to reside in a halfway house until the expiration of his term on January 31, 2016. White entered the halfway house on October 2, 2015, but he left the next day and was subsequently arrested.

At the final revocation hearing, White explained that he left the halfway house because he was upset that he was being roomed with sex offenders. He was frightened at the prospect of getting into a fight with one of them and being put in prison again, where he would be forced into violent situations. The district court observed that it

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

had been "patient with" and had "tried to work with" White, giving him many opportunities to remain on supervised release. It read aloud through White's lengthy criminal history and concluded that White was a violent person. Although the United States Sentencing Guidelines Manual (U.S.S.G. or Guidelines) § 7B1.4 Policy Statement recommended, upon revocation, three to nine months' imprisonment, the district court stated:

> The Court has taken a full look at the history of this defendant and all of the programs the Court has tried to use to help this defendant, and the Court finds that he's a violent person and cannot follow the rules and regulations for being on the streets and I will sentence you to two years in prison with no supervision to follow.

White now appeals the district court's sentence on procedural and substantive grounds.

"On appeal, we review a revocation sentence under the same 'deferential abuse-of-discretion' standard that applies to initial sentencing proceedings, considering both the 'procedural soundness of the district court's decision and the substantive reasonableness of the sentence imposed.'" United States v. Young, 640 F.3d 846, 848 (8th Cir. 2011) (per curiam) (quoting United States v. Thunder, 553 F.3d 605, 607 (8th Cir. 2009)). White first argues that the district court procedurally erred because it relied in part on his past arrests for which related charges were later dismissed. The district court, in forming the conclusion that White is a violent person, read through his litany of past offenses listed in the presentence investigation report (PSIR) from the 2010 conviction for which he was on supervised release. White pointed out to the district court that many of those incidents resulted in dismissed charges, and the district court responded that it was "going down all of your violent arrests and convictions." White argues that it was improper for the district court to rely on allegations of past behavior that were not proven in a criminal proceeding. He relies on our decision in United States v. Richey, 758 F.3d 999 (8th Cir. 2014), for this proposition, in which we said that it is procedural error for a district court to "bas[e]

-3-

a sentence on unproven, disputed allegations rather than facts." Id. at 1002 (citing Gall v. United States, 552 U.S. 38, 50 (2007)).

White misreads Richey. That case made the uncontroversial observation that "when a defendant *specifically disputes facts* contained in a report prepared by the probation office 'and the relevant responsive evidence has not already been produced at trial, *the government must present evidence at the sentencing hearing to prove the existence of the disputed facts*,'" id. (first emphasis added) (quoting United States v. Davis, 583 F.3d 1081, 1095 (8th Cir. 2009)), and applied it to a revocation hearing. We held that "a revocation sentence may not be based on disputed, unproven allegations in the probation officer's reports." Id. at 1003. But the record here does not present any indication that White disputed either the occurrence of the arrests or the underlying conduct for which he was arrested,[2] either at his revocation hearing or the 2010 sentencing hearing.[3] Further, the fact that some of those arrests resulted in dismissed charges was noted in the PSIR and acknowledged by the district court. Richey, therefore, is inapplicable.

White appears to be arguing that the district court procedurally erred when it relied, for sentencing purposes, on his arrests as set forth in the PSIR. Although we have stated that "a prior arrest record standing alone cannot be considered" for the

---

[2]At the revocation hearing, White did dispute a 2008 arrest for third-degree assault and criminal contempt, contending, "I wasn't there at that time. I pull up and the cops arrest me for criminal contempt automatically. Since I was there at an assault, they automatically think it's me because I'm there." Given the overwhelming amount of undisputed evidence of violent conduct, any error by the district court in failing to have the government prove the conduct underlying this particular arrest was harmless because "we are convinced that the error did not affect the district court's sentencing conclusion." United States v. Tabor, 531 F.3d 688, 692 (8th Cir. 2008).

[3]The PSIR notes, "In a letter dated August 30, 2010, the defense counsel noted several objections or proposed amendments to the presentence investigation report. Those objections have been resolved."

purpose of an upward departure for an underrepresented criminal history, United States v. Hawk Wing, 433 F.3d 622, 628 (8th Cir. 2006) (citing U.S.S.G. § 4A1.3(a)(3)), abrogated on other grounds by Tapia v. United States, 564 U.S. 319 (2011), district courts are not limited in the kinds of information they may consider when assessing a defendant's character for the purpose of a variance post-Booker. See 18 U.S.C. §§ 3553(a)(1), 3661. On the other hand, § 3553(a)(5)(A) requires a district court to consider "any pertinent policy statement" issued by the Sentencing Commission, and an argument could be made that the prohibition on considering arrests in the Guidelines § 4A1.3(a)(3) policy statement is pertinent here. To the extent, however, that § 4A1.3(a)(3) may be relevant to an upward variance in the context of a revocation sentencing, it is worth noting that "specific facts underlying the arrests" may be considered for an upward departure, Hawk Wing, 433 F.3d at 628 & n.4 (citing cases), and so should be fair game for a variance as well. It is clear from the transcript that the district court was relying on the violent facts, set out in the PSIR, underlying White's prior arrests. We therefore detect no procedural error.[4]

White next argues that the district court's two-year sentence, 167% above the top end of the advisory Guidelines range, was substantively unreasonable. If, as is the case here, a sentence imposed upon revocation of supervised release is permitted by 18 U.S.C. § 3583(e), we review for an abuse of discretion.[5] United States v. Walker, 513 F.3d 891, 893 (8th Cir. 2008). The district court abuses its discretion when it does not consider a factor that should have received significant weight, gives

---

[4]Furthermore, the list of twenty-one previous incidents in White's PSIR and discussed by the district court consisted of thirteen convictions replete with violent offenses. Therefore, any alleged procedural error, even if "significant," Gall, 552 U.S. at 51, was harmless because, again, "we are convinced that the error did not affect the district court's sentencing conclusion." Tabor, 531 F.3d at 692.

[5]Where the offense for which the term of supervised release was imposed is a Class C felony, as was White's, § 3583(e)(3) permits a maximum sentence of two years' imprisonment.

significant weight to an improper or irrelevant factor, or makes a clear error of judgment. United States v. Goodon, 742 F.3d 373, 376 (8th Cir. 2014). When determining whether to revoke a defendant's term of supervised release, a district court must consider certain § 3553(a) factors, see 18 U.S.C. § 3583(e), but need not discuss each of them by rote. United States v. Perkins, 526 F.3d 1107, 1110-11 (8th Cir. 2008).

Here, the district court described its efforts to impose alternate forms of punishment, the inefficacy of those forms, White's history, and his characteristic as a violent individual. We are satisfied that the district court gave proper consideration to the relevant § 3553(a) factors, and the record does not disclose any consideration of an improper or irrelevant factor. We are further satisfied that the district court did not commit a clear error of judgment in reaching the sentence it did. White had a long history of violent criminal offenses and he had violated the terms of his supervised release on at least four previous occasions. Further, the extent of the variance is exaggerated here because the Guidelines range was based on an underrepresented criminal history. White's past offenses had taken place in tribal court and therefore were not counted in calculating his criminal-history category. U.S.S.G. § 4A1.2(i). We find no abuse of discretion in the district court's sentence.

Accordingly, we affirm.

_____